We'll proceed to the next case, 15-2091, Micrografx against Google and others. Mr. Wilson. Thank you, Your Honor. Continuing with the 854 and 732 patents in the 2091 and 2092 appeals, I'd like to first raise what I think is the most fundamental issue in this appeal, and that is the Board's failure to credit Micrografx's submission of the source code evidence and arguments based on the source code evidence. So let me start… Before we get there, help me with the certificate of correction and the change in the language. I tried to find out what the certificate of correction was all about, but apparently you can't access it online. What was the ground for the certificate of correction? So the certificate of correction is actually contained in your appendix. But the ground for it, I think, was the question. Why? Why was the certificate of correction… They didn't use the correct version and you didn't notice for 10 years or something? I believe, and I'd have to look back at the file history to confirm this, that amendments were made that didn't get entered in the resulting—in the claims that actually issued. I think it's accepted that there was a mistake made, but to respond to the defense that it didn't matter as far as the issues of the substance is concerned is, I think, what we need to focus on. So the claims of the 854 patent that are at issue are actually narrower than any of the claims of the 732 patent they issued, that were at issue. That being said, the board did find that each of the various limitations that made the difference were present in PESHA, the VRML manual. So I don't think we can point you to a specific harm as a result of that mistake, other than the general observation that the board was somewhat careless in its analysis, which I think pervades the issues that I'm about to raise. Okay. So the—back to the issue of the fundamental problem with the board's opinion is that micrographics— so going back to the construction of interactive vector object, the board construed interactive vector object to be a computer software object that includes at least a mathematical description of a graphical image and a definition so that the graphical image responds to events. That much was proposed by the petitioners. It was adopted by the board. It was not disputed by micrographics. That's petitioners' own construction. What was disputed is what is the significance of computer software objects. So the board made additional claim construction holdings on computer software objects, said that a computer software object is a variable comprising both routines and data that is treated as a discrete entity. The board also observed that a computer software object is implemented in a programming language and that one computer software object can contain another computer software object, which brings us to the evidence before the board in light of PESHA. The petitioners submitted PESHA, a virtual reality modeling language book that describes VRML documents and nodes and all that, which the court is by now familiar with. The face of the book shows that it contains a CD full of source code that describes a parser, which shows how the VRML documents are converted into computer software objects. And that was before the board, right? The petitioners did not enter that evidence. They submitted the PESHA manual, but they did not submit the CD. Micrographics did submit the CD. Okay, so the board had it in front of them. Yes, yes, Your Honor. So we didn't actually submit the whole CD. We submitted excerpts of the code from the CD. The problem is the board recognized that an interactive vector object has to be a computer software object, and then its findings only consider the VRML manual, the nodes described in VRML documents. It never looks at the computer software objects. Well, you don't know that they didn't look at it, right? They don't say anything about it. It was a substantial portion of our argument. And the problem, the reason we know they couldn't have looked at it, is because the board hinged its entire anticipation based on PESHA on the fact that a VRML node, www.anchor, which the board found was an interactive vector object, actually contains in a VRML document a sphere node. It said that means there's one node that has a mathematical description of a graphical image and a definition that allows it to respond to events. But the problem is that's not a computer software object. What's written in that VRML document is not a computer software object. The computer software objects that result, which are described in the source code, the board did not look at. That evidence clearly establishes... I'm sorry, I'm not understanding what you're saying. If the anchor, www.anchor, you say incorporates the shape, but the shape is sort of a child and it doesn't become part of www.anchor, right? That's correct, Your Honor. So you're saying that the source code supports that, right? What I'm saying is the source code is the only evidence for what computer software objects are created as a result of VRML. The source code shows the actual computer software objects that get created. But I guess what I'm wondering is what does it show us that's not apparent already? What it shows is that there is an object that's created from www.anchor. It's called qv www.anchor. It is a separate object entirely from the object that's created from the sphere node, which is qv sphere. Even though the sphere node is shown within www.anchor in the text, the VRML text, when the computer software objects are created, they are entirely separate. The sphere is not within www.anchor. And that's the point that we raised. That was the subject of our expert testimony. It was the subject of much of our argument in opposition to the board's anticipation finding. But they rejected that, right? And your complaint is they didn't discuss the source code when they rejected it. The only finding we have is anticipation. They never mentioned the arguments. They never mentioned the evidence. They certainly never state that they're rejecting that evidence. No, but they concluded that the sphere was part of www.anchor, right? They did based on the way it was phrased in the VRML document. They made a finding. But our point is that finding is not supported by substantial evidence because the only evidence in the record of what computer software objects are created is the source code. There's the nodes. Admittedly, Pesci calls them objects, but he doesn't call them computer software objects. The board says that a computer software object is implemented in a programming language. VRML is not a programming language. The board says you have to have both routines and data in this computer software object. There are no routines in www.anchor. There are no routines in www.sphere. You have to look at the source code to see that. You have to look at the computer software objects. The board didn't do that. It made no findings in regard to that evidence, and that evidence conclusively establishes that the objects that are created, the computer software objects, are not. One is not contained within the other. There is not an interactive vector object that comprises those two characteristics. And if I may raise a couple of additional points, there's also the issue of the limitation, which affects some of the claims in 8.5.4 and 7.3.2, the location of the vector objects. This was another instance of the board giving an incomplete analysis. The petitioner cited the transform node. Can I just ask you, can you make your argument about the property issue? You make three issues, and that one affects a very large number of the claims because it affects most of the independent claims of the 8.5.4. Okay, so the property defining or predefining a command. Exactly, and do I understand your argument to be that the identified property that is identified by the board and by the challengers is the field that simply gives the URL. That doesn't tell you to do anything. You need something else that tells you what to do with that information, so it can't be, what is it, commanding? It's not a command, right? It's not a property defining a command. That's correct, Your Honor. You've restated the argument perfectly. The issue is the petitioners asserted originally that www.anchor was the property defining a command. Now they have said in their briefing that they didn't say that, but it's right there in the board's opinion. The board actually says they said it, and the board acknowledges that there's some conflict between the petitioner's observation or assertion that www.anchor is the property defining a command, and the board was forced to use the name field because it found that www.anchor is the interactive vector object. The property defining a command has to be within the interactive vector object, so it had to look at something else. You're saying because it's in the name field it doesn't count. What we're saying is the property has to define a command. The URL that's in the name field is just data. It's not a command. So the command would be jump to or go to this hyperlink. The board says that's okay because look at status line in the specification of the 854 patent. Status line is the same thing. It's just data, but it's not. Status line is a command as well. Status line tells the software to put text, which is data, into the status line. It's a command just like jump and just like all the other commands that are in the specification. The board simply found that the name field is a property defining a command. It's not. It's just not. Can I just, I guess I'm going to understand, if we were to agree with that point, the property point, would we simply outright reverse on anticipation of all the claims that are? That's correct, Your Honor. It would be a reversal because there's not on everything but on quite a large number of the 854 claims. That's correct, Your Honor. And so if I may jump back to the location of the vector object for just a minute. The location of the vector object is a similar issue. The petitioner cited the transform node. We deposed their expert. Their expert says put transform node in front of them. He says, no, there's nothing in this example that has location data. And then the board made the finding anyway, but then not crediting last year because it couldn't. So it made the finding anyway that transform node is somehow in parts location data. The problem is the board based its reasoning on its earlier reasoning on interactive vector object, but the issue is there's no showing in the evidence that the board was looking at that the transform node is contained in www.anchor, the only interactive vector object that the board found. If it's not, then the board has no basis for its finding that there's an interactive vector object that comprises location data. The only example it gives transform is outside of www.anchor. Even if it were to find an example with transform inside, transform, as Pesci says, the transform only affects nodes that follow. So it can't affect the node that it's within. It can only affect nodes that follow. Again, the point here is the board's finding of a location of a vector object is not supported by substantial evidence. And I'll reserve the rest of my time. Thank you. Mr. Allen. Thank you, Your Honor. And again, David Ameling on behalf of Appellees, Google, and Samsung. I plan to address the issues subject, of course, to Your Honor's questions or preference to go in a different order about the prosecution question asked by Judge Dyke regarding the Certificate of Correction, the issue regarding the Pesci CD, the property limitation, and then the location limitation. So can you skip the Certificate of Correction and talk about what significance, if any, the source code might have had? One way I'm understanding Mr. Wilson's argument, and I may be misunderstanding it, is that you don't have the required computer software object until you look and see what the software does, not what a description is. And that object actually doesn't meet the requirement. And so you can't tell it from the verbal description. You have to see what the source code says, or something like that. The Board found, and it's supported by significant substantial evidence that I will describe, that the vermal objects in the vermal code on the server is what discloses all of the elements of the interactive vector object, including the computer software object part of it. The fact that that code subsequently gets transmitted, parsed, compiled into C++ objects that may be structurally, syntactically, and semantically different from what the vermal code does, doesn't matter. The anticipation case presented by petitioners... You mean it's a second step? It's a second step on which the Board and the petitioners are not reading interactive vector object. I'd like to direct your Honor's attention, and specifically Judge Toronto, to answer your question to a part of the Board's decision on A16. A16 identifies a figure, 11.1, which talks about the structure of Pesce. And then it says at the end of the paragraph, After the document has been received by the VRML browser, it is parsed. Then a renderer uses the parsed description to create visible representations of the object described in the vermal document and displays them. The objects in the vermal document are known as nodes. The argument that the Board never considered Pesce code is simply wrong. There was significant briefing on it. The Board asked questions about it, an oral argument. The Board simply found... Let me just say, I'm not focusing on whether they considered it. I'm focusing on why, if at all, it would or would not matter. The reason it wouldn't matter is because the claims say it doesn't matter. The preamble of the claims talks about data that is operable to be downloaded. That data, whatever happens afterwards, the focus is, what does the server-side data say? Here, the server-side data is Pesce. That's what's operable to be downloaded. The fact it subsequently gets downloaded and turned into something else is not what is anticipatory. The anticipation case is based on the VRML code. And the patent is very, very clear about this in addition to the preamble. Specifically, I'd like to direct Your Honor's attention to the patent's description of the server-side or operable code, which is on A69 at column 4, line 50 to 57. This describes that the vector graphics file may be embedded in the network accessible file. The network accessible file, of course, can be in HTML. Hypertext markup language. The patent's preferred embodiment uses a markup language on the server-side, and that's where it says our vector objects are. VRML, virtual reality markup language, describes a server-side application, which describes where the objects are. Both Pesce and the patent are not talking about the post-downloaded, post-parse, post-compiled code. They're talking about the server-side code in a markup language. Can you address the property point? Yes, Your Honor. Let me begin by saying that the... Did I capture what I take their argument to be? That you identify the name field as the property. The name field contains data. It doesn't contain a command. Full stop. It can't quite... It can't satisfy the claim limitation. That's inaccurate, Your Honor, respectfully, based on what the claim language says. And it's important here that the patent owner is not appealing the claim construction. It's appealing the application and the substantial evidence standard. The reason why that's important is if you look at the court's claim construction, and specifically this is on page A14 through 15, they say that, quote, the BRI of that limitation is a characteristic describing an interaction to be carried out by a computer software in response to a user action. Then the court further gave an example of the status line, which is on figure four of the patent. Mr. Wilson says that the status line actually does contain an instruction, not just data. It doesn't. It contains a characteristic that gets subsequently turned into a command. It identifies a command. The claim language say a property defining a command, not that the property has the command. I think the clearest articulation of this, Your Honor, is if I could point you to a part of the specification, which is on column 11, line 63. And pardon the three or four sentences of reading, but I think this will make this clear. Quote. I'm sorry. Where were you again? It is column 11 of the 854 patent, line 63. Okay. Thank you. And this is in the context of describing figure seven, which illustrates the processing events for vector objects on the client system. Quote. If the event occurred within the active area of the vector object, the yes branch of the decisional step 262 leads to the step 264. At step 264, the vector graphic extension may get the properties of the vector object. Proceeding to step 266, it may be determined if the properties define a command for the event. If no command is defined for the event, the no branch of decisional step leads to the end of the process. If the properties define a command for the event, the yes decisional branch leads step 266 to step 268, and at 268, the vector graphic extension may perform the command defined for the event. Step 268 leads to the end of the process. You look to see if there has a property. If it has a property, then you look to see what the command is. Then the command gets executed by the extension. The property doesn't have the command. The property is something that identifies a command. As the board determines in its claim construction, which is not being appealed. Just as a simple-minded matter, a URL is an address. It doesn't define a command. It doesn't tell you anything about what to do with the URL. Correct. The URL is, so we're talking about a www.anchor-node vector object. Inside that, was it the name field? Is that what it's called? The name field, and it just contains a URL. Is that right? Correct. But the fact it's a www.anchor-node means that it's going to be executed to jump to that URL. So the focus being on the name field is in the context of an overall object, which defines its behavior. But the point of the board's claim construction, which isn't being appealed, is that all you need is a characteristic to lead to the execution of a command later. I didn't think that's what the claim construction said about something that would lead to, or could lead, or whatever. It's actually associated with a command to be performed in response to an event. So I'd like to direct Your Honor's attention to A14 through 15 of the board's decision in which it construed this limitation. Quote, We further determined that the property may be specified by a single value that describes a command, e.g., the status line, and need not provide all of the instructions to execute the command, e.g., to display the text. This is not being appealed. We're not appealing a claim construction.   but a field that simply says, here's the description of the command. In the context of a verbal www anchor object, it does. Because the field is within that object, and the type of the object, the fact it's a www anchor node, means it has the behavior. But isn't it under the claim language, the command actually, or the name of a command, or a pointer to a command, or some identifier of a command, have to be in the field itself, not be in some other part of the, here, www anchor? So the interactive vector object contains a property. That property identifies a command, or defines a command. That's the claim language. It doesn't require the code. And you say the property is the name field. The property is the name field in the context of a www anchor node. It's not just a... It's not just the name field. Correct. You can't look at that in isolation, because it's not. It's in an object. The object type defines its behavior. And the behavior, in the context of the field, means jump to that URL. So why can't you say that the object type satisfies this claim limitation? Because then it can't be inside itself, or something? No, Your Honor. The object type is an example of what the board found in the context of being a characteristic, which describes... But the name field isn't the object type. I apologize, Your Honor? The name field is not the object type, is it? No. The type in Pesce is... An object in Pesce has a type, and then it has a field. And the type defines its behavior. The field defines its data. Right, but those sentences... Don't those sentences put together mean that the field can't be the property that defines the command? It's the type that's defining the command. There is nothing in the claims that require you to only look at one particular part of the object. You look at the overall object. It's an interactive vector object containing these various... Well, then the answer is you're relying on the type as well as the name field. Correct, Your Honor. Did you do that before the board? I thought you said very specifically the name field is the property. So if you look at what the board did, and it did this on pages 22 through 23, it addresses this exact inconsistency that was articulated by the patent owner. And it did in the context of saying that if you look at the field of the www.anchor node, it specifies the URL, and it discloses the property because if a user clicks on it, the user goes to that URL. In other words, the board was looking at the field in the context of an object, but importantly, and this is really important, the board was looking at the consequence of doing all of that. The board was looking at as a structural or functional limitation that says if you do all these things, then you meet the claim because that's what the patent describes, an interactive vector object that when you click on it, you go someplace else. Pesci has a vector object. When you click on it, you go someplace else. What the patent owner is trying to do here and in the location and in its other arguments is to myopically look at individual parts of the vector object which ignores the syntax of Pesci. Pesci uses separator nodes and other group nodes to combine objects together to achieve the effect. That structure, that function, that result is entirely what the patent contemplates, and that's why Pesci anticipates it. What about the location issue? That seems to me a bit troubling in the sense that the locator is not within what you've defined as the vector object, which is www.anchor. Two responses to that, Your Honor. The first of which is what the board cited is not the limited argument that the www.anchor has to have within it the location. That's not how Pesci works. Specifically, I'll direct Your Honor's attention to A24 of the board's decision, and it has a sentence here that clarifies its argument on this point. Quote, The transform node changes the position, orientation, size, and center of any nodes that follow it in a group. The board was using the group, which includes the separator node, to refer to what is contained within that structure. The board also cited on that page 949, which is a part of the Pesci code. This code demonstrates that when you have a separator node that has a transfer node within it, after the transfer node, you have an object node like a sphere node, the transfer node would change the location of that object. It's the separator node that groups them together to have that effect. I'm sorry, I'm not following this. You agree that the www.anchor is the vector object, right? The vector object itself would be the sphere because it defines a shape. The interactive vector object would be www.anchor plus the shape. I apologize, Your Honor, but in the context of the location, then it would be the separator node that contains all three of those. But the problem is the separator node is not the interactive vector object. It is in the context of the code cited by the board because the separator node combines the transform, the sphere, and the www.anchor all to have an effect. Patent owner is essentially arguing that, no, don't look at the Pesci code, look at these small little things called... So the board made a mistake by saying that interactive vector object is the www.anchor because it's really the separator. You can write Pesci where the www.anchor node includes the shape node. There is expert testimony on that. That's one way to do it. The way that happened to be cited in Pesci is where you cite the transfer node before the www.anchor node, which includes the shape node, which is another way in Pesci to do it. There are different syntactical ways to achieve the same effect. And if that is... The answer to my question is that the board made a mistake in saying www.anchor is the interactive vector. The board did not make a mistake. The board cited to the separator node and then it applied that in the context of what the overall code of Pesci articulates. Where does it say that the separator node is the interactive vector object? It does... So, Your Honor, in the sentence that I read, which... I'm sorry. It doesn't. The next paragraph contains the following sentence. Which page are we on? Sure. It is A24. 24, okay. So earlier I read the sentence about what the transform node changes. Here the court said,  As described in Pesci, instructions executed by code depend on other code. Any nodes within a group node all adopt the group node's frame of reference. The separator node, at its essence, tells us when and where the frame of reference exists. The board then uses that and then identifies that based on the Pesci code. That's what's disclosed. The court used the separator node, which is one way to do it in Pesci. An expert describes it a different way. Just use a wwanchor node. Either way, the result is the same. You determine the location because you have a wwanchor node, a transform node, and then a sphere node. And you have those structures so that they work together. The idea that that particular syntax doesn't fall within the scope of the claims is such a narrow reading that is not supported by the court's claim construction, which is not being appealed, and which is fully supported by the substantial evidence. Any more questions? Thank you. Your Honor, if I could just briefly re-hit the points that were covered by counsel for petitioners. First of all, going back to the original issue that I addressed, the interactive vector object, and the argument that the petitioners made before the board and they're making here is that the claims require that the interactive vector object be operable to be downloaded. That's what, and so you don't have to look at the source code. You can just look at the VRML documents. The problem that they've got is that the VRML documents are just a markup language. They are not a programming language. They do not describe computer software objects. The computer software objects are described by the source code. It's true that the VRML document is what is downloaded, but the computer software objects that result from that downloading are described in the source code, not in the VRML documents. There is no evidence in... I'm sorry, let me strike that. There is no evidence of computer software objects in the VRML documents themselves. Those are just nodes. They're not computer software objects. The only evidence of computer software objects is in the source code. So let me address the property defining a command. The... I think, Judge Toronto, you've hit right on the appropriate issue, and that is the property defining a command has to actually refer to... Even if the property defining a command is not in the name field, it's still in the interactive vector object, which tells you to click on the address to go there, right? If it's not in the name field, it is the www anchor node itself. That is what it is. And what would be problematic about that? The board said that's the interactive vector object. What, under the text of the claim, would be problematic about that? It can't be, at the same time, the interactive vector object and contain itself effectively. Where's the claim language that you're relying on to say that one thing has to actually contain the other? The board's construction is at the bottom of appendix page 14. I'm just looking at the claim language. It says an interactive vector object comprising, and then it says a property defining a command. So if the interactive vector object is www anchor, that does tell you to go to the name field and click on the address so you go there, right? So the www anchor is, in fact, the command. I agree, Your Honor. But if it's the command, then there has to be something that contains it, something that comprises it. Because that's all it is. It's just, literally, www anchor is just a hyperlink. It just provides hyperlink functionality. It is not, as I described earlier, if you look at the actual computer software objects, that's what it provides and that's it. It doesn't contain a sphere. It just provides the hyperlink functionality. That's it. The board pointed this out in its analysis. It says that quite clearly. More importantly, the petitioner Can you quote what follows? This may be make or break. It's really important to get this right. I'm sorry, quote what follows. I thought you said the board made it clear that the interactive vector object can't be its own property. Where? No, I'm sorry, Your Honor. What I'm saying is the board made it clear that the petitioners asserted that the www anchor interactive vector object or, I'm sorry, the www anchor node was the property defining command. That's on page 22. They go on to say, basically, what we're saying is not necessarily in material conflict with that because we're identifying the name field. The petitioners in front of this court have disclaimed that position. They came back and said Well, they say the name field's not enough but the command is contained in the interactive vector object. But they said more than that. They said no one is taking the position that www anchor is the property defining command. They said that in their brief to this court. It shows on 46 to 47, neither Appalachian or the www anchor group node as meeting the property limitation. Exactly, Your Honor. So they can't get up here now and say yes we are. So what's wrong with treating the www anchor as containing the property? Because I mean, isn't it simple that within the interactive vector object is a command that tells you if you click on the URL, it takes you to the address. Is that really in because www anchor is the hyperlink. It is the command. It has a field that describes where it's taking you. So what? Why does that make it not within the claim limitation? Because you have to have an object that contains that property defining a command and a mathematical description of a graphical image. So now you have to go to something higher like the separator node, which the board never rendered any finding on. The board never said that's an interactive vector object. The problem across the board here is that the board is looking at VRML text documents and not looking at the computer software objects that result. That's why you have all these syntactic problems when you look at the syntax of VRML and it's hard to figure out what's included within what or how one thing like the transform node affects something else. It's a they're looking in the wrong place. The proper place to look for computer software objects is in the programming language C++ code that we submitted and the board ignored. Thank you, Ron. Any more questions? Thank you. Thank you both. The case is taken under submission.